## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

**vs.**                                          **No. 3:06cv543/LAC/MD**

**WARD DEAN,**
        **Defendant.**

_____

## DEFENDANT'S COMBINED RESPONSE TO
## PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS;
## MOTION TO RECONSIDER DENIAL OF DEFENDANT'S THREE MOTIONS TO DISMISS;
## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant hereby responds to Plaintiff's Consolidated
Opposition to Motions to Dismiss; respectfully moves for
this honorable court to reconsider its Denial of Defendant's
three Motions to Dismiss; and responds to Plaintiff's Motion
for Summary Judgment.

### JURISDICTION OF DISTRICT COURT

In its Consolidated Opposition to Defendant's Motions
to Dismiss, Plaintiff states that the District Court lacks
jurisdiction to consider Defendant's challenges to FCC regulations
because exclusive jurisdiction to review challenges to FCC
regulations has been vested in the courts of Appeals (Plaintiff's
brief, pp. 1-2).

However, in Pleasant Broadcasting v. FCC, 564 F 2d 496,
500 (D.C. Cir 1977) the court noted that "although section
504(a) by its terms makes no provisions for initiation of

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

2007 SEP 26  AM 11: 39

KG

FILED

judicial review by persons subject to forfeiture orders,
..., it clearly provides such persons with an opportunity
to obtain full review of the Commission's findings in a trial
de novo in the District Court, in the proceeding which the
government must bring if it wishes to collect the fine."

    The Pleasant Broadcasting court concluded that section
504(a) is "a special review statute which vests jurisdiction
over forfeiture actions in the District Court, and therefore
cuts off simultaneous jurrisdiction in other courts." Id,
501.

    In Dougan v. FCC, 21 F 3d 1488, 1491 (9th Cir 1994),
the court agreed with the reasoning of the Pleasant court,
and held that "47 U.S.C. § 504(a) vests exclusive jurisdiction
in the District Courts to hear enforcement suits by the government
and suits by private individuals seeking to avoid enforcement."

    The District Court in the Northern District of Illinois
held that "Radio licensee's Constitutional counterclaims
to FCC forfeiture action...may be heard by federal District
Court, even though 28 U.S.C. § 2342(1) provides that Court
of Appeals has exclusive jurisdiction to review final orders
of FCC, because 47 U.S.C. § 504(a), which gives District Courts
jurisdiction to hear suits for recovery of forfeitures determined
under 47 U.S.C. § 503(b) provides exception to § 2342(1)
for forfeiture orders. U.S. v. Evergreen Media Corp., 832
F Supp 1183, 1185-1186 (1993, ND IL).

    Clearly, this court has jurisdiction to rule on this
case, de novo.

2

## FCC'S ENFORCEMENT PROCESS UNJUSTIFIABLY INITIATED

The FCC's "enforcement scheme" was explained in exhaustive detail in Action for Children's Television v. FCC, 59 F. 3d .1249, 1253-1256 (D.C. Cir 1995). In that case, the court stated that "The Commission initiates the forfeiture process only after receiving a complaint from a listener or viewer." [Emphasis added].

In Admission No. 11 of Defendant's First Request for Admissions, to which Plaintiff has been deemed to have admitted, Plaintiff admits that "There is no documentary evidence that the transmissions on which the instant Forfeiture Order is based interfered with the transmission or reception of any licensed broadcaster."

Furthermore, in response to Request No. 2 in response to Defendant's First Request for Production of Documents, in which Plaintiff was asked to provide "Any written complaints or records of complaints that initiated the investigation that resulted in the Notice of Apparent Liability and/or the Notice of Liability for Forfeiture which is/are the basis for this case," Plaintiff responded that "Plaintiff does not possess or control any complaints or records of complaints."

Therefore, in the absence of any complaints from a "listener or viewer," the FCC is without justification to have initiated any enforcement action in the first place, pursuant to the mandate of the Action for Children's Television court, which held that "The Commission initiates the forfeiture process only after receiving a complaint." [Emphasis added].

3

## PLAINTIFF'S COMPLAINT IS VOID FOR VAGUENESS;
## FCC LICENSE APPLICATION IS A "RULE" FOR APA PURPOSES AND IS CONSEQUENTLY VOID
## DUE TO NOT BEING FORMALLY PROMULGATED;
## FCC REGULATIONS REGARDING RADIO STATION LICENSES ARE INVALID
## IN ABSENCE OF OMB NUMBERS

This court has previously recognized, in its Order for Plaintiff
to comply with Defendant's Motion to Compel (Doc 20), that "Plaintiff's
position in this case has become a moving target." Plaintiff continues
to bob and weave in its confusing plethora of regulations and statutes
that it alleges support its case, and which Defendant is charged with
violating, at various times.

For example, in its Undisputed Statement of Facts in its Motion
for Summary Judgment (p. 1, last two lines), Plaintiff states that "FCC
authorization was required to operate the station," and cites "Attachment
1, p. 1, ¶ 2, lines 8-10" as the authority for this requirement.

Attachment 1 to the Motion for Summary Judgment was the Plaintiff's
Forfeiture Order. The referenced section of the Forfeiture Order stated
that "a Commission authorization was required to operate the station.[2]"
Footnote No. 2 cited "47 C.F.R. § 15.239(b)" as the apparent requirement
for "Commission authorization."

However, Defendant's first interrogatory to Plaintiff asked, "What
specific rule or regulation (C.F.R.) states what specific information
is required to be provided in order to obtain the FCC license which the
government claims Defendant is required to have?"

Plaintiff responded that "The rules governing the Low Power FM
radio service are generally contained in 47 C.F.R. Part 73, Subpart G
(Low Power FM Broadcast Stations), 47 C.F.R. §§ 73.801-73.881...,"
implying that Defendant was required to obtain a Low Power FM License,
and that the alleged licensing requirement could be found somewhere in
the referenced sections of 47 C.F.R. Part 73 (as opposed to any "requirement"

4

of § 15.239(b) as cited in the <u>Forfeiture Order</u>).

However, <u>nowhere</u> in the FCC's <u>Notice of Apparent Liability</u> or <u>Forfeiture Order</u> is <u>anything</u> stated regarding Low Power FM radio service, nor was any mention made of 47 C.F.R. Part 73, Subpart G.

Furthermore, Plaintiff failed to timely respond to <u>Defendant's First Request for Admissions</u>, resulting in the <u>Admissions</u> being deemed to be admitted. Admission No. 2 is that "The alleged requirement for Defendant to obtain a license to broadcast depends upon regulations codified at 47 CFR §§ 73.3511, et seq."

Admissions 3-6 admitted that 47 CFR §§ 73.3511-73.3514 had not been assigned OMB Control Numbers, and admission No. 1 admitted that 44 U.S.C., §§ 3501, et seq, required the display of OMB control numbers upon all regulations that constitute "collections of information."

Defendant's <u>Motion to Dismiss Based on PRA Violations</u> is a detailed and exhaustively referenced analysis of the Paperwork Reduction Act (PRA) and the public protection provisions of 44 U.S.C. § 3512. There can be no dispute that the above-cited regulations (47 CFR §§ 73.3511-73.3514) are collections of information under the PRA. They do not have assigned OMB numbers. Defendant cannot be subject to any penalty for failing to comply with a collection of information that is subject to § 3512.

Defendant was charged with violating Title 47, U.S.C. §§ 301 and 303(n). It is obvious from the <u>Complaint</u> and the <u>Forfeiture Order</u> that Plaintiff's theory includes a contention that Defendant was required to obtain a license from the FCC before making any radio transmissions.

However, the requirement for obtaining a license is not the subject
of 47 U.S.C. §§ 301 or 303(n). Those requirements must appear elsewhere
in the law. If the alleged licensing requirment was void for some reason,
then Defendant could not have violated the law.

It must be noted that an average layman like Defendant, seeking
to determine whether he is required to be licensed by the FCC, confronts
confusing law. For example, 47 U.S.C. § 151 indicates the scope of the
FCC laws: those laws have been enacted for "the purpose of regulating
interstate and foreign commerce in communication by wire and radio."

Section 152, Applications of act, further buttresses the view that the
FCC laws apply only to interstate and foreign commerce: "(a) The provisions
of this chapter shall apply to all interstate and foreign communications
by wire or radio and all interstate and foreign transmission of energy
by radio...." (Emphasis added).

Section 152(b) further disclaims any effort to control intrastate
transmissions of radio signals: "...nothing in this chapter shall be
construed to apply or to give the Commission jurisdiction with respect
to (1) charges, classifications, practices, services, facilities, or
regulations for or in connection with intrastate communication service
by wire or radio of any carrier" [Emphasis added]. See Louisiana Public
Service Comm. v. FCC, 476 U.S. 355, 106 S.Ct. 1890 (1986); and National
Ass'n of Reg. Utility Comm. v. FCC, 880 F. 2d 422 (D.C. Cir 1989).

It should be noted that federal agencies may act only within the
jurisdiction delegated to them. See U.S. v. Pees, 645 F. Supp. 697 (D.
Col 1986); U.S. v. Hovey, 674 F. Supp. 161 (D. Del 1987); U.S. v. Spain,
825 F. 2d 1426 (10th Cir 1987); U.S. v. Emersons, 846 F. 2d 541 (9th
Cir 1988); U.S. v. Widdowson, 916 F. 2d 587, 589 (10th Cir 1990); and
Brown & Williamson Tobacco Corp v. FDA, 153 F. 3d 155 (4th Cir 1998).

6

Defendant challenges the claimed duty to secure a license
from the FCC in the first place. The licensing requirements
for those wishing to make radio transmissions is governed,
not by 47 U.S.C., § 301, but by § 308(b).

But the clause in § 308(b), "as the Commissioner by
regulation may prescribe," reveals that this duty manifests
itself only via duly promulgated regulations.

In its Consolidated Opposition to Motions to Dismiss,
Plaintiff agrees with admissions Nos. 2-6, and concedes that
the only regulation requiring one who wishes to transmit
radio signals to secure a license is 47 C.F.R. § 73.3514
(Consolidated Opposition, p. 8, lines 1-7):

> The burden to provide information in connection with
> an application form arises from 47 C.F.R. § 73.3514,
> which requires the applicant to provide "all the information
> called for by the form." 47 C.F.R. § 73.3514. It is
> this regulation, and not the form itself, that is subject
> to the APA's various provisions relating to public notice,
> etc.

However, having admitted that this regulation does have
some bearing upon the duty to apply for a station license,
the Plaintiff then admits that this regulation is not the
precise vehicle used to implement the law, but that its unpublished
forms are used to secure information from an applicant
(Consolidated Opposition, p. 9):

> The collections of information involved when a person
> seeks broadcast authority are contained in the FCC's
> forms....  (lines 3-4)

> None of the rules cited by the Defendant (Motion No.
> 2 at 16) contain collections of information. ... Finally,
> section 73.3514 simply requires that an applicant fill
> in all the information a form requires, and provide
> all the materials a form requires.  (lines 12-13;
> 19-20)

7

Here, the Plaintiff admits that its unpublished FCC application
forms actually implement the FCC laws.  Clearly, based on these statements
made by the Plaintiff, the forms are rules under the APA, since they
actually implement the FCC licensing laws.  However, these forms are
void because they haven't been promulgated and published.

In <u>Lanzetta v. New Jersey</u>, 306 U.S. 451, 453, 83 L.Ed. 888, 59
S.Ct. 618 (1939), the Supreme Court declared that "[n]o one may be required
at peril of life, liberty or property to speculate as to the meaning
of ... statutes.  All are entitled to be informed as to what the State
commands or forbids."

Defendant asks the simple question:  Where in the "black and white"
law is there a duty for him to supply specific information to obtain
a station license from the FCC?

In <u>Thornhill v. State of Alabama</u>, 310 U.S. 88, 97, 84 L.Ed. 1093,
60 S.Ct. 736 (1940), the Supreme Court held that "one who might have
had a license for the asking may therefore call into question the whole
scheme of licensing when he is prosecuted for failure to procure it."

47 C.F.R., § 73.3514 likewise fails to identify the information
which must be provided to obtain a station license:

Section 73.3514.  Content of Applications.

(a)  Each application shall include all information
called for by the particular form on which the application
is required to be filed, unless the information called
for is inapplicable, in which case this fact shall be
indicated.

(b)  The FCC may require an applicant to submit such
documents and written statements of fact as in its judgment
may be necessary.  The FCC may also, upon its own motion
or upon motion of any party to a proceeding, order the
applicant to amend the application so as to make it
more definite and certain.

8

Clearly, this regulation does not specify what information must be provided to secure a license. That information is obviously contained in whatever form constitutes a station license application, and the Plaintiff readily admits this fact. But that form is legally void because it has not been subjected to the APA's rule adoption process and published in the Federal Register. See <u>Appalachian Power Company v. Train</u>, 566 F. 2d 451 (4th Cir 1977).

Contrary to the Plaintiff's position, the FCC's failure to comply with the APA <u>does</u> provide a defense in this case which charged the violation of certain FCC statutes. Because the form to apply for a station license is clearly a rule for APA purposes which is void due to non-promulagation, Defendant was not required to resort to its use. Insofar as this form is concerned, it is legally invisible and the law does not require Defendant to use that form.

What is more, Plaintiff complained that Defendant did not submit to the FCC this legally void form, and thus it is adversely using this void form against Defendant. These actions are not permissible under the APA. The Plaintiff's argument that Defendant has no defense based upon this APA violation is therefore without merit.

Plaintiff further asserts that these FCC forms have been validly issued in full compliance with the APA (<u>Plaintiff's Consolidated Opposition to Motions to Dismiss</u>, p. 7, line 4).

In support of this theory, Plaintiff directed this court's attention to several issues of the Federal Register in the years 1981, 1985, 1989, and 1997. Review of these particular notices published by the FCC in the Federal Register reveals nothing but introductory comments to proposed rules, and the rules themselves.

9

Furthermore, if these notices proposed the adoption of the FCC forms as rules, the natural questions are: Why were the forms themselves not published, and why do they not appear in prior versions of the Code of Federal Regulations or the current one?

The simple fact of the matter is that these forms have never appeared in any part of Title 47, C.F.R., and they thus have <u>not</u> "been through the APA process (<u>Plaintiff's Consolidated Opposition</u> ..., p. 7, line 11).

The Plaintiff's contention that these forms have been duly promulgated by the APA approval process is just simply <u>wrong</u>! See <u>Rowell v. Andrus</u>, 631 F.2d 699 (10th Cir 1980); and <u>Maryland v. Environmental Protection Agency</u>, 530 F. 2d 215 (4th Cir 1975).

Assertions of facts in briefs do not prove anything. See <u>British Airways Board v. Boeing Co.</u>, 585 F. 2d 946, 952 (9th Cir 1978) ("But legal memoranda and oral argument are not evidence.") Thus, those factual assertions made in the Plaintiff's brief prove <u>nothing</u>, although the contents of both the Federal Register and Code of Federal Regulations may be judicially noticed.

Plaintiff also denigrates Defendant's generic references to FCC forms, application forms, , etc (<u>Plaintiff's Consolidated Oppostion</u> ..., p. 7, lines 7-11). Defendant suggests that the reason he is unable to specify these forms by form number, like the government has, is because the FCC has never published them in the Federal Register so that they may be known. If the government now finds it beneficial to reference these forms by number, perhaps it should have at some stage in this litigation submitted them to the district court and consequently made them a part of the record in this case.

The government's argument that its case was based upon statutes and not regulations simply does not constitute an adequate answer to the issues raised by Defendant. In reference to Defendant's APA defense, it is clear that the FCC laws reuire regulations to implement the licensing provisions. But those licensing regulations are deficient because they fail to specify the information one is required to submit to the FCC to secure a radio station license. Admittedly, it is the forms which actually implement the licensing provisions.

Consequently, the forms themselves are APA rules. However, the forms are void because they have never been adopted via the mandates of the APA, and the government is thus prevented from adversely using these void forms as the basis for this Complaint.

Defendant also maintains that the FCC regulations codified at 47 C.F.R. §§ 73.3511 through 73.3514 constitute, for PRA purposes, "collections of information." A "collection of information" is defined via 5 C.F.R. § 1320.3(c) as:

> the obtaining, causing to be obtained, soliciting, or
> requiring the disclosure to an agency, third parties
> or the public of information by or for an agency by
> means of identical questions posed to, or identical
> reporting, recordkeeping, or disclosure requirements
> imposed on, ten or more persons.... "Collection of
> information" includes any requirement or request for
> persons to obtain, maintain, retain, report, or publicly
> disclose information. As used in this Part, "collection
> of information" refers to the act of collecting or disclosing
> information, to the information to be collected or disclosed,
> to a plan and/or an instrument calling for the collection
> or disclosure of information, or any of these, as appropriate.

As explained in detail in Defendant's Motion to Dismiss No. 2, agency regulations may be collections of information. If they are, they must be approved by OMB and properly display an OMB control number. Succinctly, a collection of information

11

is a demand that any type of information be supplied to an
agency. Of importance is the fact that a collection of information
imposes a "burden." See 44 U.S.C. § 3502(2).

It appears, based upon statements and admissions made
in its brief, that the government fully agrees with Defendant
that 47 C.F.R. § 73.3514 is a collection of information (Consolidated
Opposition, p. 8, lines 1-7):

> The burden to provide information in connection with an application
> for a radio broadcast license arises from 47 C.F.R. § 73.3514, which
> requires the applicant to provide "all information called for by
> the form." 47 C.F.R. § 73.3514. It is this regulation, and not
> the form itself, which establishes the rule. The form merely implements
> the rule by specifying the information to be supplied. In turn,
> it is only this regulation, and not the form itself, that is subject
> to the APA's various provisions relating to public notice, comment,
> etc. [Emphasis added]

In the government's view, § 73.3514 imposes a "burden,"
and specifically requires the provision of "all information"
called for by the form. Section 73.3514 is a blatant demand
for information and clearly qualifies as a collection of
information under the PRA. However, § 73.3514 is void and
unenforceable because it fails to display an OMB control
number.

Because the government now admits that § 73.3514 not
only demands information but also imposes a "burden" (a unique
phrase under the PRA laws), this regulation is not currently
enforceable. It might be enforceable when, and if, the FCC
ever gets around to obtaining approval from OMB. But since
this important regulation lacks an OMB control number, its
requirements can be ignored with impunity.

12

## **CONCLUSION**

Defendant has demonstrated that the Complaint against him must be dismissed for a number of reasons. The government's complaint is based upon an alleged requirement for Defendant to have a license from the Federal Communications Commission (FCC).

First, Defendant has noted that the statutory scheme of the FCC laws regarding licensing is implemented by regulations, and most notably, by the licensing application forms themselves. But, these documents which implement the law have never been subjected to the rule making process of the <u>Administrative Procedures Act</u> (APA), and consequently, the applications are <u>legally void</u>. Thus, the theory of the prosecution against Defendant is that Defendant did not secure a license which can only be acquired by using legally void forms--a "Catch 22." Under the APA, a party cannot be adversely affected by refusing to use void forms. For this reason alone, the Complaint against Defendant must be dismissed.

Secondly, Defendant has attacked the alleged licensing requirements by asserting that the same fail to comply with the <u>Paperwork Reduction Act</u> (PRA). Clearly, the requirement to get a license from the FCC manifests itself via FCC regulations which lack OMB control numbers.

The public protection provision of the PRA allows members of the public to ignore with impunity any agency regulation which has not been assigned an OMB control number. Since the Plaintiff's complaint centered around the allegation that Defendant did not supply information required by a regulation which is legally void, Defendant argues that this deficiency requires dismissal of the Complaint, as well.

Since Defendant's arguments are an attack upon FCC's regulatory scheme for licensing, the Plaintiff has naturally attempted to argue the opposite by asserting that its Complaint did not depend upon regulations, but instead, statutes.

13

However, it is clear that the FCC licensing scheme is
utterly dependent upon regulations.  Furthermore, that scheme
of regulations cannot withstand close scrutiny to determine
its compliance with either or both, the APA and PRA.

The reason why Plaintiff seeks to focus this court's
attention away from Defendant's defense, is because Plaintiff
has only inconsistent and conflicting answers to these APA
and PRA arguments.  Plaintiff's reply to the APA defense
is to contend that the unpublished forms used to secure a
radio station license mean nothing, and that the applicable
regulation constitutes the basis for Defendant's alleged
duty to apply for a radio station license.

But this contention is immediately abandoned when the
Plaintiff addresses the PRA defense.  Here, Plaintiff asserts
that the regulation upon which it relies to justify its argument
about the APA really requires nothing of Defendant, and instead,
the unpublished forms which might have OMB control numbers
embody Defendant's duty to secure a station license.

Obviously, these are inconsistent positions.

Implicit within this inconsistent argument are two critical
admissions.

First, Plaintiff admits in one argument that the applicable
licensing regulation really does, for APA purposes, demand
information.  If this is correct, it means that the regulation
is void because it fails to display an OMB control number.

The second admission that Plaintiff makes is its argument
that the unpublished forms really do demand the submission
of information to the FCC.  This admission means that these
forms implement the law.  However, these forms are legally
void because they have never been promulgated via the APA's
rule making process.

14

In addition, 47 U.S.C. § 301, which Defendant has been charged with violating, is not only in conflict with §§ 151 and 152, but is unconstitutional on its face, and requires valid regulations for its implementation.

Finally, the Forfeiture Order is void if for no other reason than the enforcement actions in this case were initiated without the required complaint by a listener.

Defendant therefore respectfully requests that Plaintiff's Motion for Summary Judgment be denied, and that the instant Complaint be dismissed with prejudice.

Respectfully submitted,

Ward Dean
06076-017
Federal Prison Camp
110 Raby Avenue
Pensacola, Florida   32509-5127


**CERTIFICATE OF SERVICE**

On this $\underline{22}$ day of September, 2007, a copy of the foregoing was mailed to Paul Alan Sprowls, AUSA, 111 North Adams Street, 4th Floor, Tallahassee, Florida   32301.

Ward Dean
06076-017